**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RMA ENTERPRISES, INC.,** | : | **Civil Action No. 1:11-CV-0122** |
| **Plaintiff** | : | |
| | : | **(Hon. Sylvia H. Rambo)** |
| **v.** | : | |
| **SUSQUEHANNA BANK, RAYMOND ABBOUD, RICHARD H. MYLIN, III, ABSTRACT COMPANY OF YORK COUNTY, YORK QUALITY RENOVATIONS, LLC, WILLIAM C. CHRISMAN, JR., RYAN JULIUS, YORK FIRST, LLC., and 500, INC.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Before the court are five motions to dismiss (Docs. 38, 41, 43, 44 & 73)
Plaintiff's complaint (Doc. 1) filed by the individual Defendants.  For the reason that
follow, the motions will be granted.

I.      **Background**[1]

A.      **Parties**

Plaintiff, RMA Enterprises, Inc. ("RMA") is a corporation located in
York, Pennsylvania, which was created for the purpose of purchasing, renovating
and reselling residential real estate in that area.  (Compl. ¶¶ 3, 19.)

Defendant Susquehanna Bank, is a financial institution where a bank
account had been opened in the name of RMA.  (*Id.* ¶¶ 4, 50.)  Defendant Raymond
Abboud is a licensed real estate agent and a shareholder of RMA.  (*Id.* ¶¶ 5, 16.)

---

[1]      As is required when ruling upon a motion to dismiss, the court will accept all well-
pled facts in the complaint as true.

Defendant William C. Chrisman, Jr., is a real estate agent who engaged in business relations with RMA. (*Id.* ¶¶ 10, 27.) Defendant Richard H. Mylin, III, is a title insurance agent who works at Defendant Abstracting Company of York County ("ACYC"). (*Id.* ¶ 6.) ACYC is a title agency located in York County, Pennsylvania. (*Id.* ¶ 7.) Defendant York Quality Renovations, LLC ("YQR") is a limited liability company located in York, Pennsylvania. (*Id.* ¶ 8.) Defendant Ryan Julius worked for YQR and made renovations and improvements on property owned by RMA. (*Id.* ¶¶ 11, 30.) Defendant York First, LLC ("York First") and Defendant 500, Inc. ("500") are companies located in York, Pennsylvania, created by Defendant Abboud to allegedly compete with RMA. (*Id.* ¶¶ 12, 13, 26, 26.)

   B.   **Facts**

   RMA was incorporated in 1999 with an initial issuance of one hundred shares of stock, fifty-two of which went to Carl Dallmeyer and forty-eight to Defendant Abboud. (*Id.* ¶ 16.) Starting in January 2000, Defendant Abboud was the Director, President, Secretary and Treasurer of RMA. (*Id.* ¶ 18.) In August 2006, Carl Dallmeyer transferred four shares of his stock to a third-party, leaving both Dallmeyer and Abboud with forty-eight shares. (*Id.* ¶ 17.)

   In an effort to promote business, RMA created the telephone line "1-800-CASH NOW," which residential property owners could call if they wished to sell their properties. (*Id.* ¶ 21.) RMA and its agents would then assess the property and offer the residential owner cash on the spot. (*Id.*) After acquiring the property, RMA and its agents would make renovations and repairs and then sell the property at a profit. (*Id.* ¶ 22.) Defendant Abboud, as the principle at RMA, was in charge of following through with calls that were placed to 1-800-CASH NOW, and oversaw all transactions that occurred as a result of those calls. (*Id.* ¶ 23.) In addition, based on

2

Abboud's advice, RMA engaged the services of Defendants Julius, Chrisman, Mylin, YQP and ACYC to assist in the purchase, renovation and resale of properties acquired by RMA. (*Id.* ¶ 27.) At all times relevant, Defendants Julius and Chrisman held themselves out as agents of Defendant Abboud with regard to leads generated by the 1-800-CASH NOW number. (*Id.* ¶ 28.) In this capacity, it is alleged that Defendants Julius and Chrisman would purposefully divert sales leads from RMA to York First and 500, which were created in May 2005, unbeknownst to Plaintiff, to be in direct competition with RMA. (*Id.* ¶ 25.) Similarly, in February 2008, Abboud created York First, which was also designed to compete directly with RMA. (*Id.* ¶¶ 26, 29.) Defendants Julius and Abboud also managed YQR during this time. YQR conducted repairs on properties, and allegedly falsified documents for repairs that were billed to RMA, but not actually performed, and used YQR to otherwise divert funds from RMA to both 500 and York First. (*Id.* ¶ 30.)

Defendants Mylin and ACYC were the title agent and agency involved with conducting closings on the purchased properties. Defendant Mylin was allegedly aware sales to 500 and York First had been diverted from RMA. (*Id.* ¶ 31.)

In March 2008, RMA, at the direction of Abboud, entered into employment contracts with both Julius and Chrisman, whereby these Defendants were appointed as officers of RMA in the capacity of vice-presidents of sales and marketing. (*Id.* ¶ 32.)

In addition to the outright sale of renovated properties, RMA also had a rent-to-own program whereby RMA would own a property until a tenant could obtain the necessary financing to purchase the home. (*Id.* ¶¶ 41, 42.)

In July 2010, RMA held a shareholder meeting at which time Defendant Abboud was replaced as President by Carl Dallmeyer. (*Id.* ¶ 45.)  Prior to this meeting, RMA became aware that Defendants Abboud, Julius, Chrisman and Mylin had engaged in actions that were outside their duties to RMA. (*Id.* ¶ 46.)  Shortly after the meeting, in August 2010, RMA learned that Defendant Abboud had opened a corporate bank account at Susquehanna Bank in the name of RMA.  The account was established using Abboud's personal information such that all information regarding account activity was sent to Abboud. not RMA. (*Id.* ¶ 50.)  RMA alleges that the purpose of this account was to conceal the financial gain being generated through the business diverted from RMA and that Susquehanna Bank opened the account without first receiving approval from RMA to do so. (*Id.* ¶ 51.)  It is alleged that Susquehanna Bank was aware that a corporate resolution from the company would be required before such an account could be created. (*Id.* ¶ 53.)  This account was used to hold the funds from sales of two properties totaling almost $170,000. (*Id.* ¶ 56.)  Defendant Abboud proceeded to write checks on this account to third parties, including to Defendants Julius and Chrisman. (*Id.* ¶ 58.) Defendants Mylin and ACYC allegedly knew the funds were being deposited in this account. (*Id.* ¶ 57.)

The complaint alleges that all Defendants in this case received financial gain from these real estate transactions.  Specifically, Plaintiff claims that Defendants Abboud, Julius and Chrisman diverted sales leads; that Defendants Abboud, Julius, Chrisman and YQR received reimbursement from RMA for renovations never performed on certain properties; that Defendants Abboud, Julius, Chrisman and YQR received reimbursements from RMA for renovations done on property not owned by RMA; that Defendants Abboud, Julius, Chrisman and YQR

overpaid for properties and negligently performed renovations on them; that Defendants Abboud, Julius, Chrisman and YQR concealed information from RMA with regard to the rent-to-own program by providing misleading information regarding the creditworthiness and ability to pay of prospective home owners; and that Defendant Abboud failed to apprise RMA and its shareholders of his action at the various shareholder meetings.  (*Id.* ¶¶ 47 (a-f).)  The complaint also alleges that Defendants Mylin and ACYC had knowledge of all of these activities.  (*Id.* ¶ 48.)

Based on the above alleged actions, Plaintiff brings claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, as well as various pendant state law claims of civil conspiracy, fraud, conversion, negligent misrepresentation, intentional misrepresentation, breach of fiduciary duty, breach of contract, unjust enrichment, negligence, gross negligence, tortious interference with prospective business relations and request for injunctive relief.

### C.   Procedural History

Plaintiff filed its complaint on January 18, 2011.  (Doc. 1.)  On March 18, 2011, Defendants Abboud, Julius, 500 and YQR filed a motion to dismiss and brief in support.  (Docs. 38 & 39.)  On March 21, 2011, Defendant ACYC filed a motion to dismiss and brief in support.  (Docs. 41 & 42.)  On March 22, 2011, Defendant Mylin filed a motion to dismiss (Doc. 43), and a brief in support (Doc. 47) on March 23, 2011.  Also on March 22, 2011, a suggestion of bankruptcy was filed by Defendant Chrisman.  (Doc. 46.)  Because of this, on April 5, 2011, the court issued an order staying the case as to Defendant Chrisman.  (Doc. 51.)  On March 22, 2011, Defendant York First also filed its motion to dismiss (Doc. 44) followed by a brief in support on April 5, 2011 (Doc. 52).  On April 25, 2011, Defendant

Susquehanna Bank filed its motion to dismiss and brief in support.  (Docs. 73 & 74.) On May 9, 2011, Plaintiff filed its omnibus brief in opposition to the motions to dismiss.  (Doc. 78.)  On May 20, 2011, Defendants Abboud, Julius, 500 and YQR filed a reply brief.  (Doc. 81.)  On May 23, 2011, Defendant Susqeuhanna Bank filed its reply brief.  (Doc. 82.)  On May 26, 2011, Defendant York First replied.  (Doc. 83.)  On May 27, 2011, Defendant Mylin replied.  (Doc. 84.)  The motions are now ripe for disposition.

## II.        Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted).  As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).)  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v.*

6

*Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."  *Pension Benefit*, 998 F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.        Discussion

Plaintiff brings federal RICO claims under 18 U.S.C. §§ 1962 (a) and

(d).[2]  These Sections read as follows:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
>
> d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962 (a), (d).

Defendants Abboud, Julius, YQR, York First, Mylin and Susquehanna

Bank argue that RMA has failed to properly plead a RICO Act violation because

there was no investment of the funds allegedly obtained, which is the only federal

claim in this case, and that this court therefore lacks jurisdiction.[3]  Defendant ACYC

---

[2]      Plaintiff also brought an aiding and abetting claim under RICO, but in its brief in opposition withdrew that claim.  (*See* Doc. 78, at 5.)

[3]      Various other arguments for dismissal are raised by Defendants Mylin and Susquehanna Bank.  However, because the court agrees that Plaintiff has failed to properly state a RICO claim and

(continued...)

claims there is insufficient particularity in the pleading as required by Federal Rule of Civil Procedure 9(b), or, alternatively, Plaintiff has failed to establish the existence of an "enterprise" or organizational structure as required by RICO.

The primary purpose of Section 1962(a) is to prevent a defendant from using funds obtained through racketeering to reinvest those funds in "an enterprise engaged in interstate commerce." *See Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x. 354, 360 (3d Cir. 2010). Under Section 1962(a), a plaintiff claiming a violation must allege the following: "(1) that the defendant has received money from a pattern of racketeering activity; (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce." *Lightening Lube, Inc. v. Witco Corp. et al.,* 2 F.3d 1153, 1188 (3d Cir. 1993). In addition, "the plaintiff must allege an injury resulting from an investment of racketeering income distinct from an injury caused by the predicate acts themselves." *Id.* This is required to make a RICO claim distinct from the alleged underlying acts. As such, "it is not unlawful to *receive* racketeering income . . . rather the statute prohibits a person *who has received* such income from *using or investing it* in the proscribed manner." *Id.* (citing *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir. 1989)) (emphasis in original). This means that to properly establish a claim a plaintiff must show they are separately injured from the use and/or investment of such income, and not simply from the underlying acts which generated the income. *See Kolar, supra.*

*Lightening Lube, supra*, is a seminal case on this issue in the Third Circuit. In that case, Plaintiff claimed that Defendant stole its trade secrets, forcing Plaintiff to go out of business by using the funds Defendant allegedly derived from

---

³(...continued)
based on Defendants' failure to invest funds, they need not all be addressed.

the trade secrets to establish a competing business.  The Third Circuit determined

that this use of "racketeering income" was insufficient to establish an injury pursuant

to Section 1962(a) violation.  As the court explained:

> we have recognized repeatedly that this type of allegation-
> that the use and investment of racketeering income keeps
> the defendant alive so that it may continue to injure
> plaintiff-is insufficient to meet the injury requirement of
> section 1962(a). In such situations, we have held that the
> fact that a plaintiff claims that the injury allegedly
> perpetrated on it would not have occurred without the
> investment of funds from the initial racketeering activity
> does not change the fact the plaintiff's alleged injury stems
> from the pattern of racketeering, and not from the
> investment of funds by the defendant.

*Id.*  The court went on to explain that, in the context of corporations,

> if the mere reinvestment of racketeering income
> were to suffice [as an injury under section 1962(a)], the
> use-or-investment injury requirement would be almost
> completely eviscerated when the alleged pattern of
> racketeering is committed on behalf of a corporation.
> RICO's pattern requirement generally requires long-term
> continuing criminal conduct. *See H.J. Inc. v. Northwestern
> Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106
> L.Ed.2d 195 (1989). Over the long term, corporations
> generally reinvest their profits regardless of the source.
> Consequently, almost every racketeering act by a
> corporation will have some connection to the proceeds of a
> previous act. Section 1962(c) is the proper avenue to
> redress injuries caused by the racketeering acts themselves.
> If plaintiffs' reinvestment injury concept were accepted,
> almost every pattern of racketeering by a corporation
> would be actionable under § 1962(a) and § 1962(c) would
> become meaningless.

*Id.* at 1189.  Thus, in order to state a RICO claim, a plaintiff must allege that an

injury stems from the subsequent investment of funds by a defendant, not simply

from a defendant's predicate acts, which in this case are alleged mail fraud, 18

U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, financial institution fraud, 18 U.S.C. §

1344, and/or interference with commerce, 18 U.S.C. § 1951, as well as the factual

10

allegations contained in the complaint.

The facts in the present case are similar to those in *Lightening Lube*. Here, Plaintiff claims that Defendants diverted business — which constitutes "racketeering income" — from RMA to both York First and 500.  Plaintiff has failed to establish how this use of "racketeering income" produced an injury distinguishable from the "predicate acts themselves" or from the underlying fraudulent activity.  *Id.* at 1188; *see also Kolar v. Preferred Investments, Inc.*, 2008 WL 2552860, at *3 (E.D. Pa. 2008) (citing *Glessner v. Kenny*, 952 F.2d 702, 709 (3d Cir. 1991)).  RMA fails to plead that it was separately injured from the reinvestment of the diverted funds. Rather, its injuries, as alleged, stem simply from the underlying predicate acts of mail fraud, wire fraud, financial institution fraud, interference with interstate commerce or the state law claims of civil conspiracy, fraud, conversion, negligent misrepresentation, intentional misrepresentation, breach of fiduciary duty, breach of contract, unjust enrichment, negligence, gross negligence, and tortious interference with prospective business relations.

To be sure, Plaintiff's own omnibus brief in opposition is telling. Plaintiff cites to the following factual allegations in its complaint to support a cause of action under Section 1962(a):

> 65. As set forth above, from at least 2008, the Defendants operated and received income, directly or indirectly, though a pattern of racketeering activity indictable under 18 U.S.C. §1341 (mail fraud), and/or §1343 (wire fraud), and/or §1344 (financial institution fraud), and/or §1951 (interference with interstate commerce) and used said income in the continued operation of said racketeering activity which affects interstate commerce.
>
> 66. On at least fifty (50) occasions, the first of which occurred after the effective date of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, *et seq.* the Defendants, and each of them, used

11

interstate communications and/or the United States mails and electronic means to systematically defraud Plaintiff and other financial institutions, engaged in financial institution fraud and interfered with commerce.

67. The Defendants' pattern of racketeering activity included, *inter alia*, the theft and conversion of sale proceeds from Plaintiff on real property obtained though the 800 service, obtaining payment for services never performed on real properties owned by RMA, obtaining payment for services not performed on properties owned by RMA, overpaying for the purchase and renovation of properties, and/or fraudulently operating and managing the "rent-to-own" program, by means of mail and wire transmissions and financial institution fraud through interstate commerce and financial institutions caused damage to Plaintiff to the financial gain of Defendants.

68. The Defendants engaged in activities that affected interstate commerce in the purchase, renovation and resale of real estate.

(Omnibus Br. Opp. Mots. to Dismiss, Doc. 78, ¶¶ 65-68.)  None of these paragraphs alleges a separate injury from the alleged reinvestment of funds obtained due to racketeering.  In fact, paragraphs 65, 66 and 68 appear to simply be "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1949, which are not sufficient to support a cause of action.  Furthermore, paragraph 67, although possibly containing factual allegations, does not allege an injury not already covered by the underlying racketeering act. Plaintiff has failed to establish a separate and distinct reinvestment injury that is distinguishable from the alleged predicate acts.  As such, Plaintiff has failed to

establish a RICO violation under Section 1962(a).[4]  The federal RICO claims will therefore be dismissed.[5]

The only remaining claims are state law claims.  Although a court may exercise supplemental jurisdiction over pendant state law claims, 28 U.S.C. § 1367(c)(3) allows a court to decline to exercise such supplemental jurisdiction once all federal claims have been dismissed.  In the interest of judicial economy, and because all parties are citizens of the Commonwealth of Pennsylvania, the court finds it appropriate to decline to exercise supplemental jurisdiction and dismiss Plaintiff's state law claims as well.  *See Kolar*, 2008 WL 2552860, at \*7 (E.D. Pa. 2008).

---

[4]  Defendant ACYC does not raise the reinvestment of funds argument advanced by the other Defendants and instead focuses on Plaintiff's failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and Plaintiff's alleged failure to establish the existence of an enterprise which is separate from the alleged racketeering pattern.  To the extent this latter argument is attempting to mirror that advanced by the other Defendants, as explained above, the court agrees.  If it is a new argument, the court need not address it in light of the court's determination that Plaintiff has failed to establish a substantive claim under RICO and Plaintiff's complaint merely asserts that ACYC knew of and acquiesced in the RICO violations.  The court fails to see how ACYC could have known of and acquiesced in a RICO violation that failed to exist as a matter of law.  Therefore, the RICO violations against ACYC will be dismissed as well.

[5]  Plaintiff's only remaining RICO claim is for conspiracy under 18 U.S.C. § 1962 (d).  "Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."  *Kolar*, 2008 WL 2552860, at \*7 (E.D. Pa. 2008) (citing *Cottman Transmission Sys., LLC v. Kershner*, 536 F. Supp. 2d 543, 561 (E.D. Pa. 2008).  Therefore, because the court has found above that Plaintiff's Section 1962(a) claim is substantively deficient, the Section 1962(d) claim necessarily fails as well and will also be dismissed.

**IV.**        **<u>Conclusion</u>**

  For the aforementioned reasons, the court finds Plaintiff has failed to establish a substantive claim under 18 U.S.C. § 1962(a) and this claim will be dismissed.  Likewise, Plaintiff has failed to establish a conspiracy under 18 U.S.C. § 1962(d), and this claim will be dismissed.  The court will decline to exercise supplemental jurisdiction over all remaining state law causes of action and will be dismiss these claims as well.  An appropriate order will issue.

s/Sylvia H. Rambo   
United States District Judge

Dated:  October 3, 2011.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RMA ENTERPRISES, INC.,** | : | **Civil Action No. 1:11-cv-0122** |
| **Plaintiff** | : | |
| | : | **(Hon. Sylvia H. Rambo)** |
| **v.** | : | |
| **SUSQUEHANNA BANK, RAYMOND** | : | |
| **ABBOUD, RICHARD H. MYLIN, III,** | : | |
| **ABSTRACT COMPANY OF YORK** | : | |
| **COUNTY, YORK QUALITY** | : | |
| **RENOVATIONS, LLC, WILLIAM C.** | : | |
| **CHRISMAN, JR., RYAN JULIUS,** | : | |
| **YORK FIRST, LLC., and 500, INC.,** | : | |
| **Defendants** | : | |

**O R D E R**

For the reason set forth in the accompanying memorandum of law,

1) The stay (Doc. 51) is **LIFTED** as to Defendant Chrisman for purposes of this order **ONLY**..

2) Defendants' motions (Docs. 38, 41, 43, 44 & 73) are **GRANTED** with regard to Counts I and II.

3) Plaintiff has **WITHDRAWN** Count III.  (Doc. 78, at 5.)

4) The court will decline to exercise supplemental jurisdiction over all remaining state law claims; as such, they are **DISMISSED**.

5) The clerk of court is directed to **CLOSE** this case.

                                    s/Sylvia H. Rambo
                                    United States District Judge

Dated:  October 3, 2011.